LAWSON, J.
Thomas Laurito appeals the denial of his motion for postconviction relief after an evidentiary hearing. We find that the trial court should have granted relief with respect to the claim that Laurito’s trial counsel was ineffective for not seeking to suppress Laurito’s statements to law enforcement on grounds that the interviewing officer failed to honor Laurito’s unequivocal request for a lawyer. Had counsel raised this issue, Laurito’s confession — which served as the primary evidence against him at trial — should have been suppressed. No other issue merits discussion.
Laurito was charged and convicted of aggravated battery with a firearm, two counts of aggravated assault with a firearm, and shooting into an occupied vehicle. At trial, the State had no difficulty establishing that the crimes were committed when shots were fired from a vehicle in which Laurito was one of three passengers. But, the State relied mainly on an admission made by Laurito during a custodial interview to prove that Laurito was the shooter. At the beginning of the interview, immediately after reading Miranda[1] rights, the investigating detective asked Laurito if he would like to talk to him. Laurito responded: “Can I make a phone call so I can get a lawyer?”[2]
Prior to trial, Laurito’s counsel filed a motion to suppress, arguing that Laurito’s *205 statements were not voluntary. Counsel’s motion and argument at the suppression hearing focused on the coercive nature of the interrogation under the totality of the circumstances, with counsel arguing that the detective minimized the meaning of the Miranda rights, denied Laurito a phone call, called Laurito “a little girl,” told him to stop being a stupid ‘¾*⅜⅜⅜,” said he would be “proud” of him if he admitted shooting the “motherf*****,” told him everyone had turned on him (which was not true), and threatened to charge Laurito with attempted murder. Although counsel discussed the fact that Laurito had asked to make a phone call, he misquoted Lauri-to’s request and ignored the fact that Lau-rito had asked to call a lawyer.
In the postconviction proceedings below, Laurito correctly argued that his trial counsel missed or misunderstood the legal significance of his request to call a lawyer.[3] As explained in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), if a suspect makes an unequivocal request for counsel, police must honor that request and cease their questioning “until counsel has been made available to him.” Id. at 484-85, 101 S.Ct. 1880. Failure to do so requires suppression of any statements obtained after the suspect’s invocation of his right to counsel. Id. The issue of whether a defendant invoked his or her right to counsel is “entirely distinct” from the issue of whether a defendant voluntarily waived his or her Miranda rights, “and the two [issues] must not be blurred by merging them together.” Smith v. Illinois, 469 U.S. 91, 98, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984).
Whether a suspect has invoked the right to counsel is an “objective inquiry” that requires “ ‘at a minimum, some statement that can be reasonably construed to be an expression of a desire for the assistance of an attorney.’ ” Davis v. United State, 512 U.S. 452, 458-59, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (quoting McNeil v. Wisconsin, 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)). “A statement either is such an assertion [of the right to counsel] or it is not.” Smith v. Illinois, 469 U.S. at 97-98, 105 S.Ct. 490. This is an objective determination that will look to the understanding of a reasonable officer in light of the circumstances. Davis, 512 U.S. at 458-59, 114 S.Ct. 2350. In this inquiry, the court does not consider the totality of the circumstances of the interrogation. Smith, 469 U.S. at 97-98, 105 S.Ct. 490. In fact, it is error to consider any statements subsequent to the request, which are only relevant to the question of waiver. Id. at 98-100, 105 S.Ct. 490.
Applying these standards, we conclude that Laurito’s request to call a lawyer in direct response to the Miranda warnings constituted an unequivocal request for counsel. Cf. State v. Soto, 954 So.2d 686, 688 (Fla. 4th DCA 2007) (finding that defendant’s statement to police officer during custodial interrogation, “I can’t make a *206 phone call or nothing, no?” to be a clear and unambiguous request for a lawyer in context); Bean v. State, 752 So.2d 644, 646 (Fla. 5th DCA 2000) (viewing the statement “I should be able to talk to a lawyer” as an unequivocal request for counsel); see also State v. Dahlen, 209 Or.App. 110, 146 P.3d 359, 363-64 (2006) (holding question “When can I call an attorney?” to be an unequivocal request for counsel); United States v. Hughes, 921 F.Supp. 656, 657-58 (D.Ariz.1996) (finding question “Can I call a lawyer?” — asked in response to the defendant being advised of his Miranda rights — to be an unequivocal assertion of defendant’s right to counsel); United States v. Taft, 769 F.Supp. 1295, 1301-03 (D.Vt.1991) (holding that question “can we call — use your phone to call an attorney?” constituted an unequivocal request for counsel).
Even if Laurito’s inquiry was viewed as an equivocal question about whether he could call a lawyer, the investigating detective was legally required to cease his questioning and give a “simple and straightforward” answer in good faith. Almeida v. State, 737 So.2d 520, 525 (Fla.1999). Instead, the detective told Laurito that he could not call anyone at that time, suggested that he should not do so anyway, and told him that he would lose the opportunity to clear things up if he did not answer the detective’s questions immediately. Given these facts, we conclude that Laurito’s confession would have been suppressed by the trial court if the issue had been raised or, absent a correct ruling at that point, could have been raised as an issue on appeal. See Anthony v. State, 927 So.2d 1084, 1085 (Fla. 4th DCA 2006) (explaining that a motion to suppress only preserves for appeal the specific grounds raised in the motion and argued to the trial court, such that trial counsel’s failure to raise a viable suppression issue can be raised in a timely rule 3.850 motion). As previously alluded to, there is a reasonable probability that suppression of the confession would have changed the outcome of Laurito’s trial given that his statements served as the primary evidence of his guilt. For these reasons, we find that trial counsel’s failure to raise the invocation issue was both constitutionally deficient and prejudicial, such that the trial court should have granted relief on this claim. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Finally, we note that both the State and the trial court cite Duhart v. State, 778 So.2d 462, 463-64 (Fla. 3d DCA 2001), for the proposition that when there is a “full suppression hearing at which defense counsel argued but lost” a defendant cannot later overcome the presumption that counsel provided effective representation with respect to issues surrounding the motion to suppress. Our decision here does not conflict with Duhart. First, Laurito cannot be said to have had a “full suppression hearing” when his counsel failed to raise the legal issue that should have warranted relief. Additionally, the court in Duhart further elucidated its holding by explaining that Duhart had only made “general allegations” that his trial counsel was ineffective and failed to explain how additional evidence presented at the suppression hearing could have changed the outcome of his trial. Here, Laurito has demonstrated a reasonable probability that the outcome of his trial would have been different if his counsel had moved to suppress his confession based upon the detective’s failure to honor Laurito’s invocation of his right to counsel.
Accordingly, we reverse the order on appeal as it relates to the suppression issue, and remand for additional proceedings consistent with this opinion.
*207 REVERSED AND REMANDED WITH DIRECTIONS.
GRIFFIN and COHEN, JJ., concur.

. Miranda v. Arizona, 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The record contains two conflicting transcripts from this interview. In the first, Lau- *205 rito’s response to detective’s question was exactly as quoted above. In the other, Laurito is quoted as having uttered exactly the same question ("can I make a phone call so I can get a lawyer"), preceded by the words: "How long ...” Although this discrepancy is perplexing, it does not change our analysis.

. In his original postconviction motion, Lau-rito raised other issues related to his pretrial suppression motion that he later abandoned. At the hearing, Laurito amended his claim (with leave of court) to attack trial counsel’s failure to seek suppression of his confession based upon his unequivocal request for counsel. Then, after the trial court denied his postconviction motion, Laurito timely filed a motion for rehearing, arguing that the trial court had overlooked this issue in its ruling. The trial court denied rehearing, and this appeal followed.